UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA GAIL HENDERSON,

      Plaintiff,

v.     Case No.  8:15-cv-1433-T-MCR

CAROLYN W. COLVIN, Commissioner of
the Social Security Administration,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability, Disability Insurance Benefits, and Supplemental Security Income.  Plaintiff alleges she became disabled on June 15, 2011.  (Tr. 232-47.)  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 136-48, 152-63.)  A hearing was held before the assigned Administrative Law Judge ("ALJ") on August 9, 2013, at which Plaintiff was represented by a non-attorney representative.  (Tr. 31-52.)  The ALJ found Plaintiff not disabled from June 15, 2011, the alleged onset date, through August 29, 2013, the date of the decision.  (Tr. 12-25.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from June 15, 2011 through August 29, 2013.  Plaintiff has exhausted

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 14.)

her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED.**

I.     **Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to

determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff raises two general issues on appeal.  First, Plaintiff argues that the ALJ failed to properly assess whether Plaintiff meets or medically equals Listing 12.05(B) and (C) in light of her prior IQ scores and severe impairments.  Specifically, Plaintiff contends that the ALJ erroneously failed to give due consideration to her IQ scores of less than 60 so as to meet paragraph B of Listing 12.05.  Alternatively, Plaintiff contends that the ALJ failed to properly recognize a valid IQ score of 70 with an additional and significant work-related limitation of function in analyzing whether Plaintiff met paragraph C of Listing 12.05.  Second, Plaintiff argues that the ALJ failed to properly consider the opinions of consulting physician, Lapado Shyngle, M.D.  Defendant contends that the ALJ adequately discounted Plaintiff's IQ scores and, in any event, that Plaintiff failed to show that she had the requisite defects in adaptive functioning to meet the requirements of Listing 12.05.  Additionally, Defendant argues that the ALJ properly discounted Dr. Shyngle's opinions.

### A.   Standard for Evaluating Intellectual Disability

Listing 12.05 provides in relevant part:

[I]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the

> requirements in A, B, C, or D are satisfied. . . .
>
> B.    A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  Thus, for an impairment to meet the requirements of Listing 12.05(C), there must be deficits in adaptive functioning initially manifested prior to age 22, as well as both an IQ score in the range of 60 to 70 and a physical or other mental impairment.  *Id.*

In 2001, the Eleventh Circuit held "there is a presumption that [intellectual disability] is a condition that remains constant throughout life."  *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001).  Because of this, a plaintiff generally "meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid [IQ] score of 60 to 70 *inclusive*, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985)) (emphasis added).  Valid low IQ scores after the age of 22 create a presumption that the plaintiff had deficits in adaptive functioning manifested prior to age 22.  *Hodges*, 276 F.3d at 1269.  Even if a claimant demonstrates low IQ scores, however, the Commissioner may rebut the

presumption of mental impairment before age 22 by presenting evidence of Plaintiff's daily life.  *Id.*

The Eleventh Circuit has recognized that "a valid [IQ] score need not be conclusive of [intellectual disability] where the [IQ] score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."  *Lowery*, 979 F.2d at 837 (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)).  However, "[a]lthough the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an [IQ] score, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the [IQ] score as valid and finds that the claimant meets or equals the criteria of the listed impairment."  *Lowery*, 979 F.2d at 837 (citing *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984)).

### B.   The ALJ's Decision

The ALJ found that Plaintiff had severe impairments, including carpal tunnel syndrome, degenerative disc disease, major depressive disorder, and pain disorder.  (Tr. 14.)  However, the ALJ found that "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  (Tr. 15.)  In further analyzing Plaintiff's intellectual impairments, the ALJ stated the following:

> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. The records do include education records, which include a report from a psychological evaluation from April 1976. Wechsler Intelligence Scale for Children – Revised (WISC-R) returned a full-scale score of 55. Although this testing meets the criteria of section "B," repeat testing from when the claimant was 17 years of age, returned a full-scale IQ score of 72. Given that this testing was closer to adult age than the earlier testing, this supports a finding that the latter score is likely a more valid reflection of the claimant's cognitive abilities.
>
> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. As noted previously, the school records include reports of multiple WISC-R testing. The first two sets of tests, occurring when the claimant was 10 and [13] years of age, respectively, returned IQ scores ranging between 55 and 72. However, testing from when the claimant was 17 years of age returned IQ scores of 70 to 76. The claimant did described [sic] limitations in her ability to handle finances and complete applications. However, even if the lower scores were considered valid, the limitations suggested by these scores are contradicted by the claimant's ability to pass a written driving test, obtain a high school diploma, and her lengthy history of warehouse work performed at substantial gainful activity levels. Altogether, there is little to support finding that claimant meets any of the criteria of Listing 12.05.

(Tr. 17) (internal citations omitted.)

The ALJ then determined that Plaintiff had the residual functional capacity to perform light work with limitations. (*Id.*) Continuing on with the evaluation, the ALJ determined that Plaintiff could not perform her past relevant unskilled work

as a warehouse worker, but could perform jobs that exist in significant numbers in the national economy, such as a production worker, laundry sorter, and folder. (Tr. 23-24.)  The ALJ ultimately concluded that Plaintiff was not disabled.  (Tr. 24.)

    **C.**    **Analysis**

Upon review, the Court cannot conclude that the ALJ applied the correct legal standards for evaluating intellectual disability, thereby warranting remand. As an initial matter, the ALJ properly rejected Plaintiff's ten (10) and thirteen (13) year-old IQ scores of 59 or less (Tr. 297-301) for purposes of analyzing whether Plaintiff meets paragraph B of Listing 12.05, as those scores have become stale. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1 § 112.00D(10) (providing guidance on the evaluation of childhood IQ testing and stating that "IQ test results obtained between the ages 7 and 16 should be considered current . . . for 2 years when the IQ score is 40 or above"); *see also Robinson v. Astrue*, Case No.: 8:11-cv-2741-T-TGW, 2013 WL 544857 at *5 (M.D. Fla. Jan. 25, 2013) ("In these circumstances, the test scores were only valid for two years.  Since the plaintiff's IQ scores when he was eight are not valid with respect to child's benefits, a *fortiori*, they are not valid for a claim of adult benefits.") (internal citations omitted). However, the ALJ improperly evaluated the validity of Plaintiff's IQ scores under paragraph C of Listing 12.05.

As stated above, a plaintiff generally "meets the criteria for presumptive

disability under section 12.05(C) when the claimant presents a valid [IQ] score of 60 to 70 *inclusive*, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *Lowery*, 979 F.2d at 837 (emphasis added).  Here, the ALJ reasoned that Plaintiff did not meet the paragraph C criteria "because [she] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  (Tr. 17.)  As recognized by the ALJ, however, Plaintiff received a verbal IQ score of 70 at the age of 17.  (Tr. 17 ("[T]esting from when the claimant was 17 years of age returned IQ scores of 70 to 76."); 303-05.)  The ALJ failed to address in the decision why this verbal IQ score of 70 does not constitute a valid IQ score to meet the criteria under paragraph C.  *See Hodges*, 276 F.3d at 1266 (stating that "there is a presumption that [intellectual disability] is a condition that remains constant throughout life"); *see also* 20 C.F.R. pt. 404, Subpt. P, App. 1 § 112.00D(10) ("Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior.").

      The Eleventh Circuit has indicated that the failure of an ALJ to fully address the validity of a claimant's IQ score is a critical omission:

> "Although the ALJ is allowed some leeway to evaluate other

> evidence when determining the validity of an IQ score, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the [IQ] score as valid and finds that the claimant meets or equals the criteria of a listed impairment." *Lowery*, 979 F.2d at 837. It is therefore *critical that an ALJ specifically address and resolve the validity of an [IQ] score; if the [IQ] score is valid and meets or equals the criteria of a listed impairment, the ALJ can go no further. However, if the ALJ determines that the [IQ] score is not valid, then the ALJ must go further*.

*Thomas v. Barnhart*, Case No.: 04-12214, 2004 WL 3366150 at *2-3 (11th Cir. Dec. 7, 2004) (noting additionally that the ALJ failed to consider the validity of the plaintiff's IQ score of 69 and that a reversal with remand to the Secretary is warranted where the ALJ fails to apply the correct legal standards) (emphasis added).[2]

Here, the ALJ failed to fully consider the validity of Plaintiff's verbal IQ score of 70. Both the ALJ and the Commissioner (in her brief) ignore Plaintiff's IQ score of 70 in recognition that a higher, valid full-scale score of 72 was rendered at the same time. (*See* Tr. 17 ("[R]epeat testing from when the claimant was 17 years of age, returned a full-scale IQ score of 72. Given that this testing was closer to adult age than the earlier testing, this supports finding that the latter score is likely a more valid reflection of claimant's cognitive abilities.") (internal citations omitted); Doc. 17 at 7 ("The ALJ correctly noted that Plaintiff's only valid *full scale* IQ score, obtained when she was 17 years old, was a 72 and thus does

---

[2] In the Eleventh Circuit, "[u]npublished decisions are not binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

not meet the criteria for Listing 12.05C, which requires a valid IQ score of 60 through 70.") (internal citations omitted) (emphasis added).)  In doing so, however, the ALJ and the Commissioner incorrectly applied the Secretary's own regulation, which requires utilization of the lowest score when multiple-score tests are administered.  *See* 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.00 (c)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."); *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984).

Compounding this error, the ALJ failed to address whether Plaintiff has a physical or other mental impairment imposing an additional and significant work-related limitation of function.  Because the ALJ found that Plaintiff has other severe mental and physical impairments, it appears that Plaintiff meets this criteria of the Listing if considered.  *See, e.g., Davis v. Shalala*, 985 F.2d 528, 535 n.3 (11th Cir. 1993) ("It is settled, however, that the presence of a more than slight or minimal limiting impairment satisfies the second criteria of section 12.05(C), even if the impairment is treatable.") (citing *Edwards by Edwards*, 755 F.2d at 1516).

To the extent the Commissioner argues that the ALJ implicitly accepted Plaintiff's IQ score of 70, but found it inconsistent with other evidence in the record, such argument is unpersuasive.  The ALJ does not refer to Plaintiff's

10

behavior or daily activities in his discussion of Listing 12.05(C) and confusingly refers to "lower" IQ scores discounted in his discussion of the paragraph B criteria. (Tr. 17.) As such, the Court is, at best, "faced with an ambiguous record as it cannot verify whether the ALJ has undergone a *Popp v. Heckler*-style analysis" of any inconsistency between Plaintiff's IQ score and record evidence. *Richardson v. Colvin*, Case No.: 6:12-cv-383-VEH, 2013 WL 4459850 at *8 (N.D. Ala. Aug. 16, 2013). This ambiguity is underscored by the Commissioner's argument that the ALJ discounted Plaintiff's intellectual disability based on the lack of requisite deficits in adaptive functioning and not based on evidence contradicting an otherwise valid IQ score. (*See* Doc. 17 at 7-8.)

Finally, the undersigned disagrees with the Commissioner to the extent that she argues any error by the ALJ in evaluating Listing 12.05(C) is harmless because the ALJ found Plaintiff lacking requisite deficits in adaptive functioning. With the ALJ's failure to give due consideration to Plaintiff's IQ score of 70, and in the absence of evidence of a sudden occurrence of intellectual disability, the Court cannot determine whether the ALJ provided Plaintiff the rebuttable presumption that she had deficits in adaptive functioning as legally required.[3] *See, e.g., Williams v. Colvin*, Case No.: 1:13-cv-673-SRW, 2014 WL 4093104 at *3 (M.D. Ala. Aug. 19, 2014) ("In other words, the ALJ determined that plaintiff

---

[3] Indeed, it does not appear that the ALJ even mentioned the rebuttable presumption in his decision.

does not satisfy Listing 12.05's 'capsule' definition of [intellectual disability] . . . The problem with the ALJ's analysis is that – if plaintiff's IQ scores are valid *and* indicative of her level of functioning at age 47 – she is entitled to a presumption of deficits in adaptive functioning before age 22.") (citing generally *Hodges*, 276 F.3d at 1265). It is also unclear whether the ALJ's referenced evidence – Plaintiff's history of working at the *unskilled* position of warehouse worker, her ability to pass a driving test, and her ability to obtain a special education high school diploma – would suffice to rebut such presumption.[4] *See, e.g.*, *Lowery*, 979 F.2d at 838 (recognizing that a claimant's attendance in special education classes and evidence that the claimant can read at a third grade level while in junior high were consistent with a longstanding deficit in intellectual performance); *Johnson v. Colvin*, Case No.: CV 115-104, 2016 WL 3365312 at *5 (S.D. Ga. May 26, 2016) (holding that the ALJ erred in relying on the plaintiff's unskilled work history because the unskilled jobs were not "beyond the reach of an intellectually disabled person," and listing cases holding same), *adopted by* 2016 WL 3407835 at *1 (S.D. Ga. June 16, 2016); *Anderson v. Astrue*, Case No.: 4:10-

---

[4] The undersigned is aware of the Eleventh Circuit's holding in *Perkins v. Comm'r of Soc. Sec.*, 553 F. App'x 870 (11th Cir. 2014), that no legal error occurs when the ALJ ultimately finds no deficits in adaptive functioning despite a valid IQ score. However, *Perkins* and the Eleventh Circuit decisions cited by the Commissioner in support of such proposition are distinguishable in that the ALJ's in those cases fully addressed the validity of the claimants' IQ scores. *See, e.g., Leslie v. Colvin*, Case No.: 2:15-cv-286-VEH, 2016 WL 3906430 at *6-7 (N.D. Ala. July 19, 2016) (providing a more thorough discussion on this point of distinction). As discussed above, the ALJ failed to fully consider the validity of Plaintiff's verbal IQ score of 70 in the instant case.

cv-91-PPS, 2011 WL 4899990 at *8 (N.D. Ind. Oct. 14, 2011) ("[P]ut in proper context, the fact that Anderson can count change, volunteer at a nursing home, and perform chores around the house is not necessarily persuasive evidence of Anderson's intellectual ability."). The Court cannot conclude that the ALJ's error was harmless.

Accordingly, the Commissioner's decision is due to be remanded because the ALJ failed to state with any clarity his position with respect to the validity of Plaintiff's IQ score of 70. In light of this conclusion, the Court finds it unnecessary to consider Plaintiff's contention that the ALJ failed to properly consider the opinions of Dr. Shyngle. *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986). However, the ALJ will be directed to re-consider the opinions of Dr. Shyngle should the ALJ get past step three on remand.

Accordingly, it is **ORDERED**:

1.  The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) reconsider whether Plaintiff meets or medically equals the criteria of intellectual disability in accordance with this opinion; (b) reconsider the opinions of Dr. Shyngle, if necessary, and (c) conduct any further proceedings deemed appropriate.

2.  The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

3. Plaintiff's counsel is advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on September 19, 2016.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record